## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**SHADD STOKES**                                                                     **PLAINTIFF**

**V.**                                            **NO. 3:19CV00253-JTR**

**ANDREW SAUL,**
**Commissioner of Social Security Administration[1]**                   **DEFENDANT**

## **ORDER**

### I.    **Introduction:**

Plaintiff, Shadd Stokes ("Stokes"), applied for disability benefits on October 12, 2016, alleging disability beginning on July 30, 2015. (Tr. at 15-26). On February 18, 2019, after conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. *Id.* On August 22, 2019, the Appeals Council denied Stokes's request to review the ALJ's decision (Tr. at 1), making the ALJ's denial of Stokes's application for benefits the final decision of the Commissioner.

For the reasons stated below, the Court[2] reverses the ALJ's decision and remands for further review.

### II.   **The Commissioner's Decision:**

The ALJ found that Stokes had not engaged in substantial gainful activity

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

since July 30, 2015, the alleged onset date. (Tr. at 18). At Step Two, the ALJ found that Stokes had the following severe impairments: diabetes mellitus, late effects of injuries to the nervous system, degenerative disc disease, carpal tunnel syndrome, hypertension, gastroesophageal reflux disease ("GERD"), and obesity. *Id.*

After finding that Stokes's impairments did not meet or equal a listed impairment (Tr. at 19), the ALJ determined that Stokes had the RFC to perform work at the sedentary exertional level, except that: (1) he can only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; (2) he can never climb ladders; (3) he must avoid hazards such as unprotected heights and moving mechanical parts; (4) he must avoid concentrated exposure to pulmonary irritants; (5) he can <u>frequently</u> reach, handle, finger, and feel bilaterally; (6) he can use a cane as necessary to ambulate to a workstation; (7) he is capable of performing simple, routine, and repetitive tasks, and he is able to make simple, work-related decisions; (8) he can concentrate, persist, or maintain pace with normal breaks; and (9) he can have only incidental interpersonal contact with simple, direct, and concrete supervision. (Tr. at 21).

The ALJ found that Stokes was unable to perform any past relevant work. (Tr. at 25). Relying upon the testimony of the Vocational Expert ("VE"), the ALJ found that, based on Stokes's age, education, work experience and RFC, jobs existed in

significant numbers in the national economy that he could perform, including positions as surveillance system monitor and table worker. (Tr. at 26). Thus, the ALJ concluded that Stokes was not disabled. *Id.*

## III.   Discussion:

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*,

784 F.3d. at 477.

   B.   Stokes's Arguments on Appeal

Stokes contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that the RFC requiring <u>frequent</u> reaching, handling, fingering, and feeling bilaterally did not incorporate his limitations, that the ALJ erred in the weight given to APRN Amanda Smallmon's two medical source statements, and that the ALJ did not resolve an apparent conflict between the DOT and the VE testimony at Step Five. The Court finds support for the first two arguments.

The ALJ presented a hypothetical to the VE that included the ability to <u>frequently</u> reach, handle, finger, and feel bilaterally. (Tr. at 50-52). The VE responded that Stokes could perform the jobs of surveillance systems monitor and table worker. *Id*. When the ALJ dropped the upper extremity ability down to <u>occasional</u>, the VE responded that there were no jobs Stokes could perform. (Tr. at 50-55). Frequent requires that a person be able to perform the postural activity from one-third to two-thirds of an 8-hour workday.[3]  Occasional is defined as occuring up to one-third of the workday. *Id*. The medical evidence does not support the ALJ's RFC decision that Stokes could frequently reach, handle, finger, and feel bilaterally.[4]

---

[3]  https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001
[4]  The ALJ must consider all of the evidence in the record when determining RFC, including medical

Stokes suffered a stroke in December 2015, and he experienced general right-side weakness, numbness, and tingling as a result. (Tr. at 23). After over twenty-five visits since December 2015 with APRN Amanda Smallmon of Smallmon Family Medical Clinic, Nurse Smallmon found decreased grip strength in both hands and muscle atrophy, as well as bilateral arm pain and weakness. (Tr. at 434-458, 760-803). She found decreased range of motion in the upper extremities with wasting of the arms secondary to carpal tunnel syndrome. (Tr. at 1185-1187). She prescribed Norco and ordered nerve conduction studies and she recommended that Stokes see a neurologist. (Tr. at 454).

Nerve conduction studies revealed severe carpal tunnel syndrome in both upper extremities and severe entrapment of the ulnar nerves in both elbows. (Tr. 720-721). Dr. Demetrius Spanos, M.D., with Neurology Associates of Northeast Arkansas, saw Stokes in April and May 2016 and he confirmed the results of the nerve conduction studies; he also noted diminished muscle tone and bulk in the hand muscles on both sides. (Tr. at 1038-1047).

Orthopedist Brandon Byrd, M.D., found overall weakness and generalized atrophy in the right arm, with positive Tinel's and Phalen's test on the left. (Tr. at

---

records, observations of treating physicians and others, and the claimant's own description of her limitations. *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004).

725-728). Upon his recommendation, Stokes underwent carpal tunnel release on both arms (right arm surgery was on August 28, 2017 and left arm surgery was on May 2, 2018). (Tr. at 1193, 1242). Dr. Rebecca Barrett-Tuck, M.D., performed the surgeries, and noticed subsequent improved grip strength, but also, Stokes had continued soreness, numbness, and difficulty moving his fingers side-to-side. (Tr. at 1189-1197). At a June 21, 2018 follow-up visit, Stokes reported that he was progressing, but not as quickly in the right arm, and that he had pain and tenderness in the left elbow. (Tr. at 1255). He was urged to continue to prop up his left arm at night. (Tr. at 1257).

Stokes testified at the October 11, 2018 hearing that he could not grip or handle well since the stroke, even after the surgeries. (Tr. at 40-45). He said he had tingling in his fingers and pain in his elbows. *Id.* He said his muscle strength was not good at all, and that he had muscle atrophy in his right arm. *Id*. Stokes said that he was taking Hydrocodone three times a day and Lyrica twice a day for pain. (Tr. at 1254-1255). Stokes's wife confirmed that he had pain in both arms and often dropped objects (Tr. at 310-333)(Stokes's wife filled out all of Stokes's disability pain and function reports for him). Ms. Stokes's statement dovetailed with the consultative examiner's finding that "[Stokes] is at times totally unable to engage

6

the right arm."[5]  (Tr. at 1035). The ALJ, however, gave Ms. Stokes's opinion little

weight. (Tr. at 24).

APRN Smallmon provided two medical source letters, one dated January 24,

2016 and one dated June 1, 2018 (Tr. at 420, 1179).[6] The ALJ incorrectly

characterized the letters; she referenced only one opinion, stating that the other was

a duplicate, which it was not. (Tr. at 24, 420, 1179). Smallmon wrote in her letters

that she had treated Stokes since 2015, and that due to minimal grip strength and

general right-sided weakness from carpal tunnel syndrome and residuals from his

stroke, Stokes would not fully recover and would be unable to work. (Tr. at 420,

1179). The ALJ gave this opinion little weight, because: (1) "an opinion that a

---

[5] The consultative examiner saw Stokes on April 19, 2017, and found no limitations, but commented that Stokes's effort was inconsistent. (Tr. at 1034-1036). Because the examiner found no limitations, well before the end of the relevant time-period, which was in direct conflict with Nurse Smallmon's opinions, the ALJ could certainly have ordered a supplemental consultative examination to resolve the issue of functional limitations.

[6] Although 20 C.F.R. § 404.1527 does not specifically list APRNs as "other medical sources," district courts within the Eighth Circuit have ruled that they should be considered as such. *See Hunt v. Colvin*, No. 2:13CV42 CDP, 2014 WL 4072003, at *14 (E.D. Mo. Aug. 18, 2014) (recognizing an APRN opinion is not considered "acceptable medical source" under the Code of Federal Regulations, but rather, is considered an "other medical source"); *Moore v. Colvin*, No. 4:12-CV-3132, 2013 WL 5466910, at *21, n.11 (D. Neb. Sept. 30, 2013) (recognizing APRN opinions are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file"). Factors to consider when evaluating "other sources" are: how often the provider has seen the patient, how consistent the opinion is with other evidence, how well the source explains the opinion, the existence of relevant supporting evidence, and whether the provider has an area of expertise related to the patient's impairment. *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007).

claimant cannot work is an issue reserved to the Commissioner;" and (2) "though Stokes has generalized right-side weakness, he is able to ambulate effectively" (which does not speak to the upper extremity limitations). (Tr. at 24).

Smallmon consistently treated Stokes for four years. In 2017 and 2018, Smallmon noted Stokes had constant numbness and tingling in both hands, and found wasting of the arm muscles. (Tr. at 1071, 1155, 1163-1165). She referred him to multiple specialists and prescribed narcotics. Smallmon's opinion deserved greater weight, given the length of time she treated Stokes, the objective tests supporting her opinions, and the consistency of Stokes's complaints of pain and weakness.[7]

Had the ALJ given proper weight to Nurse Smallmon's statements, or the lay opinion from Stokes's wife, which were both consistent with the treating medical doctors' observations, she could not have found Stokes capable of frequent upper extremity postural activities. And the VE testified that, if Stokes was only capable of occasional upper extremity posturals, all jobs would be eliminated, thereby making Stokes disabled. (Tr. at 49-52). Upon remand, the ALJ should reconsider the

---

[7] Stokes submitted to the Appeals Council a medical source opinion from Toni Garner, APRN, dated March 29, 2019. (Tr. at 8-9). There were no treatment records from Garner in the record, but she said that due to residuals from the stroke, Stokes was unable to reach, finger, or handle at all during an 8-hour workday. *Id*. She said the limitation had been present since 2015. *Id*. This bolstered Nurse Smallmon's opinions.

medical opinions (and demonstrate that she has considered both of Nurse Smallmon's opinions) and further develop the record, if necessary, to establish an RFC more in keeping with the evidence in the record as a whole.

## IV. Conclusion:

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the ALJ did not give proper weight to the opinions of the medical providers, or assign an RFC reflective of those opinions.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 26th day of August, 2020.

_____
UNITED STATES MAGISTRATE JUDGE